CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAY 01 2020

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Kunta Kinte Daniels - currently located at the Roanoke, Virginia Jail. | 4:20-mj-00021 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Peter Gonzalves, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Washington Field Division, Bristol Field Office, having been duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Special Agent with the ATF and have been so employed since August 2016. I am currently assigned to the Bristol, Virginia Field Office. Prior to becoming an ATF Special Agent, I was a Special Agent with the US Department of State, Diplomatic Security Service for approximately six years. I have taken part in numerous federal, state, and local investigations concerning document and identity fraud, financial fraud, cyber crimes, and firearms and narcotics violations.

3. The facts in this affidavit come from my own investigation, observations, training and experience and information obtained from other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge of this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that Kunta Kinte DANIELS (hereinafter "DANIELS"), and others known and unknown, are engaged in a conspiracy to violate federal drug and firearm laws – to wit: possession with intent to distribute methamphetamine, heroin, and cocaine, in violation of 21 United States Code Section 841 (a)(1). In addition, there is probable cause to believe DANIELS possessed a firearm in furtherance of a drug trafficking crime, in violation of 18 United States Code Section 924(c).

5. This affidavit is submitted in support of an application for a search warrant and order for the taking of known saliva samples, by means of buccal swabs, from Kunta Kinte DANIELS, who is currently located at the Roanoke Jail (324 Campbell Avenue SW, Roanoke, Virginia), within the Western District of Virginia, for the purpose of conducting DNA comparison analysis, as evidence of him having unlawfully possessed with intent to distribute cocaine and heroin, in violation of Title 21, United States Code, Sections 841(a)(1), as well as possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

## PROBABLE CAUSE

6. Beginning at the end of October 2019, law enforcement began surveillance on 130 Colonial Court in Danville, Virginia. Over the course of next several months, law enforcement observed Kunta DANIELS walking back and forth between apartments 42 and 45 on a regular basis. Apartments 42 and 45 can be seen at the same time during surveillance.

7. Between November 2019 and March 2020, law enforcement performed regular surveillance on 130 Colonial Court in Danville, VA. A single officer at a time performed surveillance at least once a week, but often surveillance was performed multiple times a week. Surveillance sessions lasted between 20 minutes and a few hours. Law enforcement observed DANIELS walk back and forth between the apartments at least once a week, but often many times a week. It appeared that Kunta DANIELS used a key to enter apartment 45 even though it is not leased in his name.

8. Utility records show Kunta DANIELS is the registered tenant in 130 Colonial Court Apartment 42. Additionally, VA Department of Motor Vehicles (DMV) records list 130 Colonial Court Apartment 42 as DANIELS' residence.

9. Utility records show the listed tenant in apartment 45 as D.R. D.R. listed a New Jersey phone number, and has a New York driver's license. During surveillance law enforcement observed D.R. at apartment 45 on November 21, 2019. As more fully described above, law enforcement has conducted surveillance on that apartment at least one time per week, sometimes more, for January-March 2020. Law enforcement has not observed D.R. at apartment 45 in 2020.

10. The persons most often observed at apartment 45 from October 2019-March 2020 were Kunta DANIELS and Raphael Daniels, believed to be Kunta's cousin. From time to time law enforcement saw other persons at Apartment 45. However, law enforcement did not observe activity consistent with any full-time resident of that apartment or any other persons at apartment 45 with the frequency of Kunta DANIELS and Raphael Daniels.

11. On March 3, 2020, while conducting surveillance on 130 Colonial Court in Danville, Virginia, law enforcement observed an individual they recognized as Raphael Daniels arrive at 130 Colonial Court driving a silver Kia sedan. Raphael Daniels walked up to

apartment 45 carrying a backpack.  At approximately 10:45 AM, he and Kunta DANIELS came out of Apartment 45 together.  Kunta DANIELS had been in the apartment prior to Raphael's arrival.  Raphael was not carrying the backpack upon leaving apartment 45.  Raphael left in the Kia and DANIELS left in a black Jeep Grand Cherokee, which is registered to him at 130 Colonial Court apartment 42, Danville, Virginia.

12. On March 4, 2020, law enforcement observed Kunta DANIELS arrive at 130 Colonial Court in his black Jeep.  He walked up to apartment 45 alone.  Seconds later, he walked downstairs to apartment 42 alone.

13. On March 9, 2020, investigators with the Danville Police Department (DPD) conducted surveillance on 130 Colonial Court in Danville, Virginia.  They observed an individual they recognized as Kunta DANIELS, wearing a pair of blue and white high top basketball sneakers, move several times between apartments 42 and 45 in the complex.

14. On March 10, 2020 at approximately 12:37 PM, investigators conducting surveillance on 130 Colonial Court observed an individual they recognized as Raphael Daniels arrive at the complex in a silver Nissan Altima.  Raphael Daniels walked to apartment 42, where Kunta DANIELS resides, placed a white box on the chair outside the door, and walked back to the vehicle.  Kunta DANIELS stepped outside apartment 42.  Raphael picked up the box from the chair, and walked into Apartment 42 with Kunta.  Raphael then walked upstairs to apartment 45 carrying the white box.  Kunta walked upstairs and into Apartment 45 a few seconds later.

15. On March 10, 2020 at approximately 12:44 PM, law enforcement observed a silver Chrysler 300 pull into the lot at 130 Colonial.  A lone black male exited the vehicle and walked into apartment 45.  At 12:45 PM, he walked down to his vehicle and drove away.  This individual did not carry any large items with him into or out of the apartment.

16. On March 10, 2020 at approximately 12:45 PM, law enforcement observed Kunta DANIELS and Raphael walking from apartment 45 to DANIEL's Jeep.  They both entered and drove away.  Investigators maintained visual surveillance on both apartments 42 and 45.  No one entered either apartment until Kunta DANIELS and Raphael Daniels arrived back at the complex at approximately 2:14 PM.  At that time, both individuals walked from the Jeep directly to apartment 45.  Kunta DANIELS appeared to use a key to open the door of apartment 45, and both individuals walked in.  Less than a minute later, both individuals walked out of apartment 45.  Raphael walked out first, then Kunta DANIELS stepped out and closed the apartment door behind him.  Raphael Daniels walked back to the silver Kia sedan he arrived in and drove away.  Kunta DANIELS walked into Apartment 42.  No other individuals entered or exited Apartments 42 or 45 until DPD officers arrived at approximately 2:31 PM to execute search warrants.

17. On March 10, 2020, investigators with DPD executed state search warrants at 130 Colonial Court apartment 42 and 130 Colonial Court apartment 45 in Danville, Virginia.  While conducting the search of apartment 45, officers located the following suspected

3

illegal drugs: approximately 380 grams of suspected cocaine base (crack cocaine) in a bedroom; approximately 300 grams of suspected heroin in the kitchen closet; approximately 50 grams of suspected heroin wrapped in individual packaging intended for distribution in a shoe box in the same bedroom; and approximately 450 grams of powder cocaine in an open duffel bag in the same bedroom. A subsequent field test of the suspected cocaine base yielded a positive result for the presence of cocaine. A subsequent field test of the suspected heroin yielded a positive result for the presence of heroin. A subsequent field test of the suspected powder cocaine yielded a positive result for the presence of cocaine. Based on my training and experience, greater than 300 grams each of several controlled substances is far more than what would constitute a "personal use" quantity, and would constitute a distributable amount. Cocaine is listed by the Drug Enforcement Administration ("DEA") as a Schedule II controlled substance. Heroin is listed by the DEA as a Schedule I controlled substance. Possession of a controlled substance with intent to distribute is a violation of 21 U.S.C. § 841(a)(1), and possession of greater than 280 grams of cocaine base is a violation of 21 U.S.C. § 841(b)(1)(A).

18. In the kitchen of apartment 45, investigators located several boxes of sandwich bags in a cabinet. Based on my training and experience, I know sandwich bags are often used to package smaller quantities of controlled substances for resale. In another cabinet, investigators located a vacuum sealing apparatus. I know this type of system is often used to package larger quantities of controlled substances for resale. Investigators did not locate any food items in the residence that were vacuum sealed. Also in apartment 45, investigators located 2 mechanical presses and what appeared to be parts to a third. Based on my training and experience, these presses appeared to be configured to manufacture "bricks" of drugs. Based on training and experience, I know drug traffickers often use this type of machine to compress wrapped powdered drugs into shapes that can be easily handled. They also often fabricate shaping components to emboss characters or logos into the bricks as a sort of logo or identifying "brand." One of the presses located in the residence contained a mold bearing the letters "TNT." Investigators also located suspected crack cocaine in a peanut butter jar in the kitchen cabinet and a quantity of suspected crack cocaine in a vegetable can in the same cabinet.

19. Investigators located approximately $10,000 in apartment 45 and approximately $40,000 in Apartment 42.

20. Investigators further located the following firearms in apartment 45: New Frontier Armory Model LW-15 AR-15 style semi-automatic pistol S/N NLV79485 in the same duffel bag in the bedroom described above containing the suspected narcotics; Remington Model 870 Express Magnum 12 gage shotgun with an unknown serial number on the floor of the bedroom; Glock Model 34 9mm pistol S/N KUL817 in the nightstand drawer; and a Sig Sauer Model SP2022 9mm pistol S/N 24B239425 on the living room couch covered by a towel. Based on my training and experience, I know the presence of distributable amounts of controlled substances concealed in numerous locations, large amounts of currency, and packaging materials would indicate that the apartment was being used primarily as a "stash house." While there was clothing, food

and a bed present in apartment 45, surveillance over the course of several days showed no indication of a full time resident. Also based on my training and experience, I know the only conceivable use for firearms at such a location would be to protect the "stash" of illegal drugs and large amounts of currency. It is a violation of 18 U.S.C. §924(c)(1)(A) to possess a firearm in furtherance of a drug trafficking crime. Possession with Intent to Distribute Controlled Substances (21 U.S.C. § 841(a)(1)) meets the definition of a "Drug Trafficking Crime" under 18 U.S.C. §924(c).

21. Additionally, investigators conducting the search of the residences located a single key that opens both apartment 42 and 45 on DANIELS' keychain with his car keys. This key appears to be a master key.

22. In an interview with former employees of the apartment complex, investigators learned that for the last several months Kunta DANIELS has been paying the rent of both apartments 42 and 45, in cash. He paid the rent for each apartment on different days of the month. He further put in at least one maintenance request for Apartment 45.

23. 130 Colonial Court, Danville, Virginia is located in the incorporated City of Danville, which is in the Western Judicial District of Virginia.

24. Based on my training and experience, I know that trace evidence, including but not limited to, fibers, soil, glass, human hair, and other materials are often exchanged between individuals during physical contact. Trace evidence can also be transferred from individuals to environments and surfaces and from environments and surfaces to individuals. Likewise, biological evidence, such as blood, skin cells, and DNA can be transferred during physical contact. Both trace and biological evidence can indicate where an individual may have been or with whom or what items physical contact has occurred. Based on my training and experience, I also know that both trace and biological evidence can be present for extended periods. I also know that both trace and biological evidence may not be visible to the naked eye and can remain on surfaces even when attempts have been made to remove them.

25. Based on my training and experience, I also know the following:

    a. DNA analysis may be conducted on bodily fluids or biological tissues recovered from items of evidence. The DNA testing results obtained from evidence samples are compared to DNA from reference samples collected from known individuals. Such analyses may be able to associate suspects with evidence items or with a crime scene.
    b. Nuclear DNA is the most discriminating type of DNA and is typically analyzed in evidence containing body fluids, skin cells, bones, and hairs that have tissue at their root ends. This type of DNA testing has the ability to identify or exclude an individual as being the source of the DNA obtained from an evidence item.
    c. Mitochondrial DNA (mtDNA) is a form of DNA that is transmitted from mother to child in a complete set; therefore, anyone in the maternal lineage will have the same mtDNA profile. This type of DNA testing can be used on evidence items

such as naturally shed hairs, hair fragments, bones, and teeth. mtDNA analysis is highly sensitive and may allow scientists to obtain information from items of evidence containing little biological material. Because multiple individuals can have the same mtDNA profile, unique identifications are not possible from mtDNA analysis.

## CONCLUSION

26. Based upon the foregoing, I submit that there is probable cause to believe that known saliva samples taken from DANIELS will provide evidence that DANIELS unlawfully possessed with intent to distribute cocaine and heroin, in violation of Title 21, United States Code, Sections 841(a)(1), as well as unlawfully possessing a firearm while in the furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924 (c) and/or eliminate DANIELS DNA from any profile identified from the items submitted for comparison.

s/ Peter Gonzalves_____
Peter Gonzalves
Special Agent
Bureau of Alcohol, Tobacco, Firearms, & Explosives

Sworn and attested to telephonically.
Subscribed and sworn to me this __1st__ day, in May, 2020.

*Robert S. Ballou*
The Honorable Robert S. Ballou
United States Magistrate Judge